NOT RECOMMENDED FOR PUBLICATION
File Name: 06a0782n.06
Filed: October 20, 2006

No. 04-5776

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

NATASHA W. CORNETT,

      Petitioner-Appellant,

v.                                                                          On Appeal from the United
                                                                            States District Court for the Eastern
CHERRY LINDAMOOD, Warden,                                                    District of Tennessee

      Respondent-Appellee.

———————————————————————/

BEFORE:    RYAN and COOK, Circuit Judges; and GWIN, District Judge.[*]

      RYAN, Circuit Judge.    Natasha W. Cornett appeals the district court's order

denying her 28 U.S.C. § 2254 habeas corpus petition. Pursuant to a package plea

agreement in which the state of Tennessee agreed not to seek the death penalty, Cornett

and her five codefendants pleaded guilty to three counts of first degree murder, one count

of attempted first degree murder, two counts of especially aggravated kidnaping, two

counts of aggravated kidnaping, and one count of theft of property valued between

$1,000.00 and $10,000.00. Cornett was sentenced to life in prison. She now argues that

her guilty pleas were unconstitutionally coerced because the plea agreement offered her

was "packaged" with and conditional upon the plea agreements offered her confederates.

_____

     [*] The Honorable James S. Gwin, United States District Judge for the Northern
District of Ohio, sitting by designation.

We **AFFIRM** the district court's denial of Cornett's <u>habeas</u> <u>corpus</u> petition because she fails to establish that her guilty pleas were obtained in violation of established federal law as determined by the Supreme Court.

## I.

On April 6, 1997, Cornett and five friends acquired two guns and set out on a road trip from Pikeville, Kentucky, to New Orleans, Louisiana. <u>State v. Howell</u>, 34 S.W.3d 484, 487 (Tenn. Crim. App. 2000). They soon realized that their car would not survive the trip, and they discussed the possibility of stealing a car from a parking lot or dealership. <u>Id.</u> The group stopped at a rest stop along Interstate 81 near Greenville, Tennessee, where another traveler, Vidar Lillelid, an active Jehovah's Witness, approached them. <u>Id.</u> A conversation ensued with Vidar Lillelid, his wife Delfina, their six-year-old daughter Tabitha, and their two-year-old son Peter. <u>Id.</u> At some point, one of Cornett's companions displayed a gun and directed the family to its van, stating: "I hate to do you this way, but we are going to have to take you with us for your van." <u>Id.</u> Vidar Lillelid offered his keys and wallet in exchange for permission to remain at the rest stop, but his request was denied. <u>Id.</u>

Vidar Lillelid, still at gunpoint, was directed to leave the interstate at the next exit and to drive to a secluded place. <u>Id.</u> at 488. One of the members of Cornett's group then shot Vidar Lillelid six times, once in the eye, and five times in the chest, killing him. <u>Id.</u> at 489. Three of the wounds in his chest formed the shape of an equilateral triangle. <u>Id.</u> Delfina Lillelid was shot eight times. <u>Id.</u> Bones in her left arm and thigh were shattered, but her wounds were not immediately fatal; she died shortly thereafter. <u>Id.</u> Three of the wounds

in her back formed a triangular pattern.  Id.  Tabitha Lillelid received one shot to the head, from which she died the next day.  Id. at 489-90.  Peter Lillelid was shot twice from behind; he survived, but lost his right eye.  Id. at 490.

Cornett and her companions fled the scene in the Lillelids' van, running over Delfina Lillelid, who was possibly still alive.  Id. at 489.  They drove to Mexico where they were stopped by the Mexican authorities, arrested, and eventually returned to Tennessee.  Id. at 488-89.  Several members of the group had personal items belonging to the Lillelids in their possession when they were arrested.  Id.

The state of Tennessee filed charges and notified Cornett and her three adult codefendants that the state would request the death penalty.  Id. at 489.  Shortly before trial, and after extensive pretrial proceedings, the state offered, in writing, to withdraw its intent to seek the death penalty against the adult defendants if each of the defendants would plead guilty to three counts of first degree murder and one count of attempted first degree murder.  Id.  All the defendants, including Cornett, accepted the offer.  Id.  Cornett and all of her codefendants entered guilty pleas consistent with the agreement.  In February 1998, Cornett was sentenced to three consecutive terms of life in prison with no chance of parole, plus an additional 25 years.  Id. at 489, 490-91.

A few years later, on July 19, 2001, Cornett filed a petition for post-conviction relief in the state court, claiming, among other things, that her guilty pleas were not voluntary because of the coercive effect of the package plea offer, which, in effect, was that only if Cornett pleaded guilty would her companions avoid the death penalty.

The state court reviewed the record made at Cornett's guilty plea hearing three years earlier, which revealed that the court explained to all six defendants, as a group,

each of the charges and the consequences of pleading guilty. The defendants answered together that they understood the consequences of pleading guilty to the charges. The court also asked the defendants, as a group, whether their pleas were voluntarily made; whether any force or threats were used to cause them to plead guilty; whether they were satisfied with counsel; and whether they had used drugs or alcohol in the previous 24 hours. The transcript indicates that Cornett answered that her pleas were voluntary, and she gave no indication that she was not satisfied with her counsel. The court also asked Cornett individually about her education level and ability to read and write, and whether she was pleading guilty to the charges because she was, in fact, guilty. She stated that she could read and write, and that she was pleading guilty because she was guilty.

At the completion of the post-conviction proceedings, the court found that Cornett's pleas were knowing and voluntary, were made upon the sound advice of her attorneys, and were not made as a result of stress caused by the package plea offer. The court also noted that Cornett was fully aware of the consequences of her pleas and represented at the sentencing hearing that she was not under the influence of drugs or alcohol.

After she exhausted her post-conviction remedies in state court, on May 2, 2003, Cornett filed a pro se application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, arguing that her guilty pleas were unconstitutionally obtained and that her counsel provided ineffective assistance. The district court granted the warden's motion to dismiss, explaining that, although the Supreme Court has indicated that a plea offer which promises lenient treatment of a third party creates a greater danger of imposing a false guilty plea, it has not indicated that such offers are per se unconstitutional. The district court also found that Cornett's ineffective assistance of counsel claims were procedurally defaulted.

On June 7, 2005, this court granted Cornett a certificate of appealability on the issue whether the package plea offer unconstitutionally coerced her guilty pleas, and granted her leave to proceed in forma pauperis.

**II.**

We review the district court's legal conclusions in a habeas proceeding de novo and its factual findings for clear error. Jones v. Jamrog, 414 F.3d 585, 590 (6th Cir. 2005). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may grant habeas relief only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2) (West Supp. 2006). We presume that the state court's factual findings are correct unless the petitioner offers clear and convincing evidence to rebut the presumption of correctness. 28 U.S.C. § 2254(e)(1) (West Supp. 2006).

A state court adjudication is contrary to "clearly established Federal law" only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if it decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 413 (2000). The state court's adjudication is unreasonable if the state court identifies the correct governing legal principle from Supreme Court decisions but unreasonably applies that principle to the facts of the prisoner's case. Id.

The Supreme Court has established that a trial court may not accept a guilty plea "without an affirmative showing that it was intelligent and voluntary." Boykin v. Alabama, 395 U.S. 238, 242 (1969).  Although the Supreme Court has indicated, in dicta, that "a prosecutor's offer during plea bargaining of adverse or lenient treatment for some person other than the accused" may "pose a greater danger of inducing a false guilty plea by skewing the assessment of the risks a defendant must consider," Bordenkircher v. Hayes, 434 U.S. 357, 364 n.8 (1978), it has not specifically addressed the constitutional implications of such offers, much less determined that plea agreements resulting from them are per se unconstitutional.

### III.

The state court found that Cornett's pleas were not coerced by the package offer, but were "in all respects voluntarily, knowingly, understandingly and intelligently made." The court first noted that, under Tennessee precedent, package plea offers are an acceptable means of reaching a plea agreement.  The court then determined that Cornett discussed the plea offer in great detail with her experienced, prepared attorneys, and was aware of the consequences of her guilty pleas.  The court noted that Cornett's attorneys testified that she "exhibited nothing to indicate coercion by the package offer."  The court explained that "[t]actically the attorneys had no choice but to recommend the plea[s]," because the record clearly refuted Cornett's contention that she was not a knowing and willing participant in the shootings.  The court also determined that there was no evidence to indicate that Cornett was under the influence of drugs at the time she made her pleas. The court noted that, at the plea colloquy, Cornett told the court that she had not used any

drugs in the 24 hours prior to the plea colloquy and that she was pleading voluntarily.  She also answered in the affirmative when asked whether she was satisfied with her counsel.

Cornett argues that the package plea offer unconstitutionally coerced her guilty pleas because:  1) contrary to the state court's findings, there was no factual basis for her guilty pleas; 2) the state's promise to withdraw its intent to seek the death penalty against her codefendants was the primary consideration in her decision to plead guilty; 3) the sentencing court failed to carefully examine the voluntariness of her guilty pleas because it conducted a group plea colloquy and accepted group answers to some of the questions asked during the plea colloquy; and 4) other factors, such as antidepressant medication, impermissibly influenced her guilty pleas.

Cornett fails to present clear and convincing evidence to rebut the presumption that the state court's factual findings are correct, and her argument is meritless given the high burden AEDPA places on habeas petitioners.  The Supreme Court has not determined that package plea agreements are per se unconstitutional, and the record supports the state court's conclusion that Cornett voluntarily and knowingly pleaded guilty to the charges against her after being fully informed of the consequences her guilty pleas.  We agree with the district court that the state court's determination that Cornett's guilty pleas were not unconstitutionally coerced by the package plea offer is neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court.

**IV.**

For the foregoing reasons, we **AFFIRM** the judgment of the district court denying Cornett's 28 U.S.C. § 2254 habeas corpus petition.